## GEORGE RUBY *v.* THE STATE.

1. CONTINUANCE — NEW TRIAL. — Defendant in a murder case applied for a continuance to obtain the testimony of a witness by whom he could prove uncommunicated threats by the deceased against defendant's life, and alleged that by other evidence he would prove hostile demonstrations by the deceased immediately before the homicide. The continuance was refused, and at the trial there was no evidence tending to prove hostile demonstrations by the deceased, or that he was the aggressor. *Held*, that this state of case shows that the desired proof of uncommunicated threats was not material to the defence, and that the refusal of the continuance is not cause for a new trial.

2. EVIDENCE. — To impeach a State's witness, the defence proposed to prove by a grand juror that the witness, in his testimony before the grand jury, made statements contradictory of his testimony at the trial. *Held*, in view of the grand juror's oath prescribed by the Code, that the proposed proof was correctly excluded.

3. PRACTICE — THE "RULE." — In a trial for murder, the prosecution caused the witnesses to be placed under the rule, but was subsequently allowed, over the defendant's objection, to introduce and examine a witness who

had not been put under the rule, but who had not heard other witnesses testify, and whose testimony was made material by evidence adduced by the defence. *Held*, that no error is apparent.

4. EVIDENCE. — The defence was not entitled to put a State's witness on her *voir.dire* for purposes within the scope of cross-examination.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The indictment charged the appellant with the murder of John Townsley, on April 19, 1877, by shooting him with a pistol. The jury found him guilty of murder in the second degree, and assessed his punishment at twenty years in the penitentiary.

It appears by the evidence that the appellant and John Townsley, the deceased, were brothers-in-law and neighbors, and had been friends until the night previous to the homicide, when an altercation occurred between them about a mare which the appellant had loaned to the deceased. In the course of the altercation a good deal of rough and irritating language was interchanged. Late the next evening the appellant appeared on horseback at the deceased's gate, which was some twenty-five feet from the gallery of his house. Wayne Townsley, a brother of the deceased, was sitting on the gallery, and asked the appellant to get down and come in. Appellant replied, " No, I have not time; which way is John? " The deceased, who was in the house, stepped out on the gallery and accosted the appellant, saying, " How are you, Doc? Get down." The appellant replied that he had not time, and said, " John, you called me a d—d picayunish kind of a fellow last night, didn't you? " The deceased replied, " Yes, I did; " and the appellant retorted, " By G—d, no man can call me that and ride a horse of mine; I am going to take the mare." The deceased replied, " Well, take her; " and the appellant replied, " By G—d, I will take her." In the meantime the deceased had passed from the gallery out of the gate to where the appel-

lant sat on his horse. To the last remark of the appellant he responded, "Get down, and I'll see you take her;" and then the appellant jerked out his pistol, and the deceased made a grab at it. Appellant struck the deceased over the head with the pistol, and the latter staggered, when the appellant shot him. The ball took effect in the forehead of the deceased, and he fell dead. The appellant rode off rapidly towards his home, and in a few hours started away from the neighborhood. Several months elapsed before he was brought back in arrest.

The foregoing account of the homicide is drawn from the testimony of Wayne Townsley, but is substantially the same as that given by the wife of the deceased, who stated that she was in the house and heard the altercation, as well as saw the shooting.

The effort of the defence was to break the force of the State's evidence by proving that the witnesses had made statements out of court materially different from their testimony, and tending to show that the shooting was either accidental or in self-defence.

*Sheeks & Sneed*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Hurt, J.   There are three points raised in the record requiring our consideration : —

First, the application for continuance ; second, the rejection of evidence offered by defendant ; and, third, the ruling of the court touching the introduction of Mrs. Mary Cunningham as a witness.

1. The ground of continuance was for the want of the evidence of a witness who, if present, would prove hostile feeling and threats toward defendant by deceased, entertained and made just before the killing, but not communicated to defendant. It will be noted that the applica-

tion contained a promise to prove, by other witnesses, " that at the time of, and immediately preceding the homicide, said deceased made demonstrations and did acts showing an intention, at that time, to carry said threats into execution." Had this or a similar statement been omitted, the application would have been fatally defective. The application being sufficient upon its face by reason of the above promise, and worthless without it, we are to look to the statement of facts to see if this was fulfilled. We are unable to find from the evidence one fact tending in the slightest degree to prove acts or demonstrations showing an intention to execute the threats. If no one had seen the killing, or had there been a conflict of evidence as to who began the violence, this evidence would be material, and its rejection by the court would have been error. But the homicide was witnessed by two persons, who swore positively that deceased made no demonstration until after defendant had drawn his pistol. To support the above, the following authorities are referred to : *Lander* v. *The State*, 12 Texas, 471 ; *Carter* v. *The State*, 8 Texas Ct. App. 372.

One Wayne Townsley, a material witness for the State, was sought to be impeached by defendant, by laying the predicate in proper questions, and proving that he had made statements before the grand jury in conflict with his evidence on the trial. The county attorney objected, among other grounds, upon the following: " That the witness could not be made to disclose what he had sworn before the grand jury." This objection was sustained by the court, and defendant saved the question by bill. Under the common law, and our Code prior to the act of 1875, this would have been a proper predicate, because a witness could have been impeached in this manner. What effect has the act of 1875 upon this right? Is it restrictive in its nature, and therefore an abrogation of the old rule? This is the question for our determination, and its proper solution requires a construction of art. 384, Code of Criminal Procedure.

That portion of the article bearing upon this point reads as follows :   " The State's counsel, your fellows', and your own you shall keep secret, unless required to disclose the same in the course of a judicial proceeding in which the truth or falsity of the evidence given in the grand jury room in a criminal case shall be under investigation."

From this we learn that the truth or falsity of the evidence given in the grand jury room must be under investigation in a judicial proceeding.   It follows that if this investigation (it being in a judicial proceeding) was for the purpose of determining the truth or falsity of the evidence given in the grand jury room, then it would be admissible. Concede its admissibility ; would it (the evidence in the grand jury room) be the subject-matter of the investigation — the matter to be determined true or false?   The investigation in this judicial proceeding here under investigation is not for the purpose of determining the truth or falsity of the evidence in the grand jury room, but the guilt of the defendant.   Nor is its truth or falsity drawn into the investigation in this case collaterally.   Its truth or falsity is not even drawn into this investigation remotely.   If the juror had been permitted to swear to what the witness had sworn in the grand jury room, the evidence of the witness in the jury room would not have been for the purpose of establishing its truth or falsity, but solely for the purpose of impeaching the witness Townsley.   The law permits the introduction of conflicting statements for no other purpose. We therefore conclude that the truth or falsity of the evidence was not drawn into the investigation in this judicial proceeding, and that the juror could not be made to disclose it.   Art. 384 specifies the cases in which the evidence is admissible, and the specifications exclude all other. *Tindle* v. *Nichols*, 5 Mo. 326.

The defendant complains of the action of the court below in regard to the competency of Mrs. Cunningham as a witness.   The record informs us that the defendant attempted

to impeach Mrs. Townsley, wife of the deceased, by proving statements made by her out of court conflicting with those made in court.    These statements were charged in the predicate to have been made in the presence of Mrs. Cunningham, the objectionable witness.    As soon as the county attorney learned of the necessity of Mrs. Cunningham's evidence he sent for her, and upon her arrival in the courthouse, placed her upon the stand.    At the request of the State, all the witnesses had been placed under the rule.    The defendant objected to Mrs. Cunningham testifying, and the court overruled the objection ; to which ruling the defendant excepted.    In this there was no error.    *McMillan* v. *The State*, 7 Texas Ct. App. 142 ; *Ham* v. *The State*, 4 Texas Ct. App. 665.

The defendant further complains of the court below because he was not permitted to examine Mrs. Cunningham on her *voir dire*.    She being a competent witness, how the defendant could have been injured we fail to see.    All questions as to her bias, relationship, and conversations with others in regard to the case could have been propounded to her on cross-examination.

The charge of the court is without fault in any particular. The evidence is full and complete for the offence found in the verdict.    We must therefore affirm the judgment, which is accordingly done.

*Affirmed.*